## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| MINDY BROOKS,<br>              Plaintiff,<br><br>              v.<br><br>OFFICE OF THE TIPPECANOE COUNTY<br>CORONER and DONNA AVOLT, *in her<br>individual capacity*,<br>              Defendants. | CAUSE NO.: 4:17-CV-93-TLS-JEM |

## OPINION AND ORDER

This matter is before the Court on Defendants Office of Tippecanoe County Coroner and Donna Avolt's Motion to Dismiss [ECF No. 12], filed on January 25, 2018. For the reasons stated below, the Motion is GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are alleged in Plaintiff Mindy Brook's Complaint and Demand for Jury Trial [ECF No. 1], filed on December 5, 2017. Sometime before October 2017, the Plaintiff began working as a deputy coroner for Defendant Office of Tippecanoe County Coroner. Compl. ¶¶ 6, 14, ECF No. 1. While the Plaintiff was employed by the Coroner's Office, Defendant Donna Holt was the county coroner. *Id.* at ¶ 7. During the course of the Plaintiff's employment, she was repeatedly and explicitly required to perform personal tasks for Defendant Avolt, without pay, in order to keep her job. *Id.* at ¶¶ 8–10.

The Plaintiff represents that she believed Defendant Avolt asking her to perform personal tasks was inappropriate and unlawful, which caused her to file a complaint with the Tippecanoe County Government's human resource department. *Id.* at ¶ 11. The Plaintiff was told that her complaint would be confidential; however, Defendant Avolt was informed of the Plaintiff's

complaint approximately two years after it was filed. *Id.* at ¶¶ 12–13. During a meeting in October 2017, Defendant Avolt terminated the Plaintiff's employment, citing the complaint as the reason for termination. *Id.* at ¶¶ 14–17.

On December 5, 2017, the Plaintiff filed a Complaint and Demand for Jury Trial [ECF No. 1] alleging the Defendants' conduct violated the minimum wage provisions of the FLSA (Count I), the anti-retaliation provisions of the FLSA (Count II), and the Indiana Wage Claims Statute and/or Indiana Wage Payment Statute (Count III). On January 25, 2018, the Defendants filed a Motion to Dismiss [ECF No. 12]. The Plaintiff filed her Response [ECF No. 15] on February 8, 2018, and on February 15, 2018, the Defendants filed a Reply [ECF No. 16]. The case was reassigned to the undersigned as presiding judge on May 1, 2019. *See* ECF No. 23. The Court has reviewed all relevant filings and is prepared to rule on the instant Motion to Dismiss.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, the Court must accept all of the factual allegations as true and draw all reasonable inferences in the light most favorable to the Plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). However, though a complaint need not contain detailed facts, surviving a Rule 12(b)(6) motion

2

"requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true . . . ." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## ANALYSIS

The Defendant's Motion to Dismiss asserts several bases for dismissal. The Court need not address each basis, as the Defendants' argument that the Plaintiff cannot bring a claim under the Fair Labor Standards Act because she is not a covered employee is sufficient to warrant dismissal. The Court need not address any of the Defendants' arguments related to the Plaintiff's state law claim, as the Court, due to the presence of complex state law issues, declines to retain supplemental jurisdiction over the dispute.

**A.      Plaintiff's FLSA Claims**

The Fair Labor Standards Act of 1938 ("FLSA") was implemented to regulate commerce among the several states by eliminating labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers. 29 U.S.C. § 202. The protections established by the FLSA are extended to anyone defined as an employee under the Act, which includes "any individual employed by a State, political subdivision of a State, or an interstate governmental agency." *Id.* § 203(e)(2)(C). However, state employees who are appointed by an elected official "to serve on a policymaking level" are excluded from the Act's definition of employee. *Id.*[1]

---

[1] The Court notes that "[t]he Seventh Circuit has broadly applied the policymaking exception to the ADEA and Title VII cases in addition to First Amendment political patronage cases." *Ross v. Adams*, No. 2:16-cv-297, 2017 WL

In *Opp v. Office of State's Attorney of Cook County*, the Seventh Circuit explained that "[a]n individual is considered an appointee on the policymaking level if 'the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation.'" 630 F.3d 616, 619–20 (7th Cir. 2010) (quoting *Americanos v. Carter*, 74 F.3d 138, 141 (7th Cir. 1996)). When considering whether an individual is a policymaking employee, "a court is to examine 'the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office . . . . [W]e emphasize[] the functions of the office involved, not the officeholder.'" *Id.* at 620 (alteration in original) (quoting *Tomczak v. City of Chicago*, 765 F.2d 633, 640–41 (7th Cir. 1985)). "[D]etermining the powers inherent in a given office may be done without the aid of a finder of fact 'when the duties and responsibilities of a particular position are clearly defined by law and regulations.'" *Id.* at 621 (quoting *Vargas–Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 972 (7th Cir. 2001)).

The Defendants argue that the Plaintiff is prohibited from bringing an FLSA claim because she was appointed by an elected official to serve on a policymaking level. County coroners are elected officials, Ind. Const. art. 6, § 1, and they have the authority to appoint deputies, Ind. Code § 36-2-16-7. As such, it is clear that the Plaintiff was appointed by an elected official; however, whether she served on a policymaking level remains at issue. The Defendants primarily rely on the Seventh Circuit's decision in *Kline v. Hughes*, 131 F.3d 708 (7th Cir. 1997), to support their argument that the Plaintiff was a policymaking employee.

---

3034267, at *4 (S.D. Ind. July 18, 2017). Other courts have applied this caselaw to FLSA cases because "the policymaking exception in the definition of employee under the FLSA is nearly identical to the same exception within the ADEA and Title VII." *Id.* Accordingly, this Court will apply the Seventh Circuit's policymaking caselaw to the instant case. *See id.* (citing *Birch v. Cuyahoga Cty. Prob. Court*, 392 F.3d 151, 161 (6th Cir. 2004)).

In *Kline v. Hughes*, Plaintiff Kline brought suit against Defendant Hughes "pursuant to 42 U.S.C. § 1983, for allegedly violating her right to freedom of political association secured to her by the First Amendment to the United States Constitution." No. EV 96–18C–R/H, 1997 WL 151312, at *1 (S.D. Ind. Mar. 5, 1997). The Defendant filed a motion for summary judgment arguing that the plaintiff failed to state "a First Amendment claim because [the plaintiff's] former position as deputy auditor made her political affiliation a constitutionally permissible consideration for employment." *Id.* At the district court level, Judge Barker applied an analysis similar to the Seventh Circuit's analysis in *Americanos* to determine "whether the position held by [the plaintiff] authorize[d], either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Id.* at *2–3 (quoting *Americanos*, 74 F.3d at 141).

As part of her *Americanos* analysis, Judge Barker first explained:

> In regard to the position of deputy county auditor, Indiana law states that the deputy auditor "shall take the oath required of the [County Auditor]." Ind. Code § 36–2–16–2(b). The deputy "may perform all the official duties of the [County Auditor] and is subject to the same regulations and penalties as the officer." Ind. Code § 36–2–16–3(a). Furthermore, the County Auditor "is responsible for all the official acts of the deputy." Ind. Code § 36–2–16–3(b).

*Id.* at *3. She further explained:

> For Hughes's part, the duties of County Auditor are enumerated in Title 36, Article 2, Chapter 9 of the Indiana Code. The Auditor is the "fiscal officer of the county" (Ind. Code § 36–2–9–2) and is obligated: to perform the duties of clerk of the county executive (Ind. Code § 36–2–9–7); to perform the duties of clerk of the county fiscal body (Ind. Code § 36–2–9–8); to administer oaths necessary in the performance of [her] duties and take acknowledgments of deeds and mortgages executed for the security of trust funds [she] is required to lend (Ind. Code § 36–2–9–9); to sue principals or sureties on any obligation in the name of the state and on behalf of a county fund (Ind. Code § 36–2–9–10); to keep a separate account for each item of appropriation made by the county fiscal body (Ind. Code § 36–2–9–13); to draw warrants on behalf of the county treasury (Ind. Code § 36–2–9–14); to examine and settle all accounts and demands that are chargeable against the county (Ind. Code § 36–2–9–15); to issue warrants for claims or judgments or orders (Ind. Code § 36–2–9–16); to call for and redeem outstanding warrants (Ind. Code § 36–

5

> 2–9–17); and to indorse, require, and establish the tax identification number on deeds for real estate (Ind. Code § 36–2–9–18).

*Id.* Judge Barker then granted the motion for summary judgment by concluding:

> Kline's position as deputy auditor authorized her to perform all of the duties of the Auditor. Accordingly, Kline was empowered to carry out all of the duties enumerated in Title 36, Article 2, Chapter 9 of the Indiana Code, including the power to sue in the name of the state and to issue warrants for claims or judgments or orders. Following the Seventh Circuit's reasoning, it would appear that, because Kline had authority as a deputy auditor to act in the name of the State, the deputy auditor position inherently carries with it the ability to have meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation.

*Id.* (quoting *Americanos*, 74 F.3d at 141–42; *Wells v. State of Indiana ex rel. Peden*, 175 Ind. 380, 385 (1911)) (internal quotation marks omitted).

On appeal, the Seventh Circuit affirmed Judge Barker's decision by explaining that "[u]nder Indiana law, a deputy county auditor may perform all the official duties of the county auditor; the county auditor is responsible for all the official acts of the deputy," *Kline*, 131 F.3d at 710 (citing Ind. Code § 36–2–16–3(a) & (b)), and reasoning that "[t]his arrangement makes clear that the office of deputy auditor plays a vital role in the implementation of the county auditor's policies," *id.* Ultimately, the Seventh Circuit concluded that "this statutory scheme places the deputy county auditor in a position that carries with it the inherent ability to have 'meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation.'" *Id.* (quoting *Americanos*, 74 F.3d at 141).

The Seventh Circuit's decision in *Kline* has clear applications to the instant case. Like deputy auditors, a deputy coroner may perform all the official duties of the county coroner and the county coroner is responsible for the deputy coroner's actions under the same statutory scheme. Ind. Code §§ 36-2-16-3, -7. If the Court were to broadly interpret *Kline*'s analysis of deputy auditors to include deputy coroners, this fact would be sufficient to dismiss the Plaintiff's

6

FLSA claims. The Seventh Circuit in *Kline* specified that "[t]*his arrangement* makes clear that the office of deputy auditor plays a vital role in the implementation of the county auditor's policies" and that "*this statutory scheme* places the deputy county auditor in a position that carries with it the inherent ability to have meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Kline*, 131 F.3d at 710 (emphasis added and internal quotation marks omitted). As the same arrangement and statutory scheme exist between the county coroner and his or her deputy coroners as exists between the county auditor and his or her deputy auditors, the Court, applying the Seventh Circuit's rationale in *Kline*, would reach the same conclusion: that deputy coroners have meaningful input into governmental decision-making.

The Court, however, believes that *Kline* could be interpreted more narrowly. Indeed, *Kline* may merely stand for the principle that, if superior officers holding a policymaking position are authorized to appoint and are responsible for deputies who hold the power to perform the same functions as the superior officer, then the deputy also holds a policymaking position. Such an interpretation would require the Court in this case to assess the functions of the county coroner to determine whether the county coroner is a policymaker. Notably, in *Kelley v. Davis*, the district court first considered the duties of an Indiana county assessor before concluding that the deputy county assessor was an appointee on the policymaking level. *Kelley v. Davis*, No. 1:11-cv-331, 2013 WL 5486742, at *5 (S.D. Ind. Sept. 30, 2013) (explaining that the court "must examine the duties of the county assessor"). In *Kelley*, the court reasoned that

> the duties of deputy county assessors in Indiana to (1) effect the assessment of real and personal property using the discretion given to them, (2) resolve appeals, and (3) adjust erroneous assessments carries an inherent opportunity to provide meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals and their implementation.

7

*Id.* Likewise, this Court will first consider the functions of the county coroner and then determine whether those functions constitute policymaking.

Before proceeding forward with this analysis, the Court notes that it seems unlikely that the Defendants agree with this interpretation of *Kline*. The Court holds this belief because, instead of explaining which of the county coroner's duties constitute policymaking and why, the Defendants instead make the broader argument that "[a]ll elected officeholders, and by extension their deputies, must exercise discretion in carrying out their duties and complying with applicable laws," Defs.' Reply 3, ECF No. 16, that "the duties of a coroner to investigate deaths involve more discretion and policymaking than the clerical functions of an auditor to maintain county financial records," *id.*, that "[b]oth a coroner and her deputy are in positions that involve inherent policymaking," *id.*, and that "there is no distinction between a deputy auditor and deputy coroner which would result in a different outcome for [the Plaintiff]," Defs.' Mem. of Law 8, ECF No. 13. These assertions are merely conclusory statements, and, although perhaps correct, do not provide any reference to corroborating caselaw. Accordingly, the Court finds it necessary to consider the functions of the Plaintiff's position as deputy coroner before reaching an ultimate conclusion.

The Court is not aware of any caselaw addressing whether an Indiana coroner holds a position that requires meaningful input into governmental decision-making. *See Alexander v. O'Neil*, No. 06 C 6045, 2007 WL 2792145, at *3 (N.D. Ill. Sept. 25, 2007) (finding that a deputy coroner is a policymaker under Illinois state law); *see also Jorg v. City of Cincinnati*, 145 F. App'x 143, 146–47 (6th Cir. 2005) (finding that, in the context of a § 1983 claim, a coroner making "a cause of death determination does not constitute 'policymaking'" for purposes of municipal liability, but acknowledging the possibility that "certain of the Coroner's [other] activities might constitute policymaking"). The Plaintiff, in her Response, confirms that she, too,

was unable to find any applicable caselaw and contends that the functions of the deputy coroner are ministerial. Pl.'s Resp. 2–3, ECF No. 15. To determine whether Indiana county coroners are policymakers, the Court must examine the statutory functions of the position. *Opp*, 630 F.3d at 620–21.

The duties of a county coroner are rather extensive and are enumerated in Title 36, Article 2, Chapter 14 of the Indiana Code. The Court finds it unnecessary to list and describe each of the county coroner's statutory functions; therefore, the Court will include only the statutory functions considered in the Court's analysis. Accordingly, the Court notes that county coroners are responsible for filing a death certificate and making decisions regarding the investigation of the death of a person, including whether the cause of a person's death was accidental and whether an autopsy is necessary and who should conduct the autopsy, Ind. Code § 36-2-14-6; determining the appropriate method to determine the identity of human remains and making a positive identification of human remains, Ind. Code § 36-2-14-6.5; and examining witnesses wanting to testify under oath concerning a death under investigation and certifying a physician's participation in such an investigation, *id.* at § 36-2-14-7.

As previously explained, "[a]n individual is considered an appointee on the policymaking level if 'the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation.'" *Opp*, 630 F.3d at 619. It is apparent that the above-described functions authorize such input.

First, Indiana Code § 36-2-14-6 permits the coroner to have an autopsy performed when he or she considers one to be necessary. Ind. Code § 36-2-14-6. The decision of whether to conduct an autopsy is governmental decision-making and, certainly, there are circumstances in which two reasonable coroners could disagree on whether an autopsy is necessary.

9

Second, Indiana Code § 36-2-14-6.5 requires a coroner to determine the identity of human remains by utilizing fingerprint identification, DNA analysis, dental record analysis, tracking a unique identifying number on a surgically implanted medical device, or positive identification by the deceased's family members. *Id.* at § 36-2-14-6.5. Selecting which method of identification a coroner will use in a particular circumstance requires governmental decision-making, and reasonable coroners could disagree on which method is most appropriate. Furthermore, a coroner's decision could vary depending on his or her goals, such as utilizing the most accurate, expedient, or cost-effective method, and such goals may differ among reasonable coroners.

Finally, Indiana Code § 36-2-14-7 permits coroners to examine witnesses to a death under oath as a part of the investigation process. *Id.* at § 36-2-14-7. Just as with lawyers, coroners are likely to have different examination techniques and hold varying opinions on what techniques are most effective. Coroners engaging in such a process will have to make several decisions, including which questions should be asked. Certainly, conducting such an examination requires a great deal of governmental decision-making, and, even in the case of a successful examination, there will be ample room for principled disagreement on the examination process.

These three functions alone are sufficient for the Court to conclude that the county coroner has meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation. Because the Plaintiff was a deputy coroner and authorized to perform all the official duties of the county coroner, the Plaintiff served on policymaking level. *See Kline*, 131 F.3d at 710.

In addition, the Court deems it appropriate to note that there are circumstances in which a county coroner's duties expand beyond those enumerated in Title 36, Article 2, Chapter 14 of the Indiana Code. For example, the county coroner "shall perform the duties of the county sheriff . . .

in cases in which the sheriff (1) is interested or incapacitated from serving; and (2) has no chief deputy who may perform the sheriff's duties." Ind. Code § 36-2-14-4; *see also* Ind. Code § 36-2-14-5. Thus, for the purposes of the Court's analysis, a county coroner's functions also include the duties of the county sheriff, which are set forth in Title 36, Article 2, Chapter 13 of the Indiana Code. Indiana law requires sheriffs to perform numerous functions, many of which authorize governmental decision-making. *See id.* at § 36-2-13-5. For example, the county sheriff is tasked with taking care of the county jail and its prisoners. *Id.* at § 36-2-13-5(7). Such a responsibility undoubtedly requires governmental decision-making, as the sheriff is tasked with implementing policies to staff the jail and ensure the safety of the prisoners housed at the jail. *See Luck v. Rovenstine*, 168 F.3d 323, 326 (7th Cir. 1999) ("[T]he sheriff serves as the county's official decision-maker in matters involving the county jail."); 210 Ind. Admin. Code 3-1-1 et seq.; 25A Ind. Law Encyc. Sheriffs and Constables § 15. Accordingly, the fact that county coroners may, by statute, be tasked with performing the functions of the county sheriff further supports the Court's conclusion.

Based on the above analysis, the Court concludes that the Plaintiff holds a position that authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation. Accordingly, the Plaintiff was appointed by an elected official, Defendant Avolt the Tippecanoe County Coroner, and served on a policymaking level. Thus, she is not an employee as that term is defined in the FLSA and cannot bring a claim under the Act. For this reason, the Plaintiff's FLSA claims must be dismissed.

**B.      Plaintiff's State Law Claims**

The Plaintiff, in addition to her FLSA claims, alleges that the Defendants violated the Indiana Wage Claim Statute and/or the Indiana Wage Payment Statute. The Plaintiff asserts that

11

"[t]his Court properly has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367," Compl. ¶ 4; thus, the Plaintiff's state law claims rely on the Court's supplemental jurisdiction. The Court has, however, determined that the Plaintiff's federal FLSA claim must be dismissed, thus the status of the Court's supplemental jurisdiction must be addressed.

"Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010) (quoting *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009)). The Seventh Circuit has identified three occasions where the court should retain supplemental jurisdiction: "(1) 'the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court'; (2) 'substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort'; or (3) 'when it is absolutely clear how the pendent claims can be decided.'" *Sharp Elecs. Corp.*, 578 F.3d at 514–15 (quoting *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)). The instant case presents none of the above-described occasions.

Here, the statute of limitations has not run on the Plaintiff's state law claims, as "Indiana law gives a plaintiff three years from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court." *Dupont Hosp., LLC v. Myers*, No. 1:19-CV-241, 2019 WL 3317327, *1 (N.D. Ind. July 22, 2019) (citing Ind. Code § 34-11-8-1). Further, few judicial resources have been committed to the instant case. Although this matter has been pending for several years, the parties represented that they have "refrained from conducting discovery while the motions to dismiss are pending," Agreed Mot. ¶ 4, ECF No. 19, and discovery was stayed on July 26, 2018. *See* ECF No. 20. As such, dismissal will not result in a substantial duplication of either the judiciary's or the parties' efforts. Finally, the proper

resolution of the state law claim is not clear given the issues concerning exhaustion of administrative remedies raised by the instant motion. *See Melton v. Tippecanoe County*, No. 4:11-CV-46, 2014 WL 1230735, at *5 (N.D. Ind. Mar. 24, 2014) (declining to retain supplemental jurisdiction because, among other reasons, "the claim raises a complex issue of state law related to exhaustion and what it means for a case to 'work its way through the proper channels-the DOL and, if need be, the Attorney General-before it may be brought in court.'" (quoting *Lemon v. Wishard Health Servs.*, 902 N.E.2d 297, 301 (Ind. Ct. App. 2009))). Accordingly, dismissal of the Plaintiff's state law claim is warranted. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law . . . .").

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendants' Motion to Dismiss [ECF No. 12] and the Plaintiff's claims are DISMISSED.

SO ORDERED on August 14, 2020.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT
